THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

GENERAL DIVISION
THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

GENERAL DIVISION

*********************** DISTRICT OF UTAH ***************************

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:13CR92 DS |
| Plaintiff, | MEMORANDUM OPINION AND ORDER ADDRESSING DEFENDANTS' MOTION TO SUPPRESS |
| vs. | |
| JOSE LORENZO ANDINO, | |
| Defendant. | |

***********************************************************************

Defendant Jose Lorenzo Andino filed a motion to suppress statements by defendant after his arrest, and fruits thereof, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(C). There was a hearing on the matter on November 20, 2013, followed by post hearing briefing. Andino argues in his motion that the *Miranda*[1] warnings were not sufficient, the statements made by the defendant were involuntary because they were induced by false promises, and that the officers failed to take Andino to a magistrate without unnecessary delay and therefore his statements must be suppressed.[2]

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 467-468 (1966).

[2] Andino also raises for the first time in his response to the government's opposing brief that the stop of defendant's vehicle was not reasonable. This issue was not raised in a timely manner as the government was not able to fully examine witnesses about the reasons for the stop itself. It does appear, however, that the stop was supported by reasonable suspicion in addition to the traffic violations that had been observed.

## I. RELEVANT FACTS

On January 30, 2013, the Drug Enforcement Administration ("DEA") was conducting a court-authorized wiretap on an illegal narcotics distribution organization operating in Southern California. Agents received information over that wiretap that a suspected drug transaction was going to take place at a Target store parking lot in California and the information was passed on to police working in that area.

Agents established surveillance in the Target parking lot and observed a Jeep with Idaho plates matching the general description given on the wiretap in the parking lot. Two males were observed with some white PVC pipes. After about an hour, another vehicle pulled next to the Jeep, and its occupant took possession of some of the PVC pipes. DEA agents monitoring the wiretap informed the police officers on the scene that they believed the illegal narcotics were in the PVC pipes and the agents asked the police officers to take enforcement action on both vehicles.

The Jeep was stopped after it was observed running a red light and the driver was identified as the defendant, Jose Andino. As Officer Guthrie made contact with Andino, Andino remarked, "it's not mine, it's not mine." This was then clarified by Andino as "the dope, it's not mine." Officer Guthrie asked for consent to search the Jeep and Andino gave consent. When officers approached the PVC pipes, Andino stated, "that's where the dope is." Officers observed a black substance inside the PVC pipes that appeared to be heroin and Andino confirmed that it was.

Andino was detained at the scene and ultimately arrested. Andino was not questioned further about the offenses at the scene. Andino was then transported to the Fontana police station, roughly an hour drive from the site of the arrest. Andino was not questioned during the

2

transport. Andino was processed at the police station by the intake officer, given *Miranda* warnings and interviewed about the drug offense. Officer Guthrie read the warnings from a *Miranda* form and Andino affirmatively responded that he understood each right as it was read to him. The interview and the *Miranda* warnings were recorded.

In the interview Andino told Officer Guthrie that he was to deliver the PVC pipes containing heroin to a man in Salt Lake City, Utah. At the conclusion of the interview, Andino was asked if he would like to cooperate by participating in a controlled delivery of the heroin and Andino agreed to do that. DEA Agent Dawe contacted Salt Lake City DEA Agents to coordinate the delivery once Andino agreed to cooperate. DEA Agents then drove from San Diego to Fontana to take custody of Andino. Once in Fontana, DEA agents confirmed with Andino his willingness to cooperate in making a controlled delivery in Utah. DEA agents then drafted a form stating that Mr. Andino was waiving his right to an initial appearance before a Federal Los Angeles Magistrate, that law enforcement could not make any promises regarding his prosecution, and that his cooperation would be brought to the attention of prosecutors subsequent to any actions he took to assist law enforcement. Andino signed the waiver form.

Andino was taken into custody by San Diego DEA agents who drove him to Las Vegas, Nevada where he was transferred to Salt Lake City DEA agents for the purposes of completing the controlled delivery in Utah. DEA Agent Street took custody of Andino in Las Vegas and then had a lengthy conversation with Andino during the drive from Las Vegas to Salt Lake City. Street was informed by other officers that Andino had been given his *Miranda* rights and had waived them. During the conversation Street used the terms "work it off" and "get some credit" and promised that he would let the prosecutor know of Andino's cooperation, but ultimately confirmed with Andino that his cooperation would not result in his release. On January 31,

2013, Andino assisted with a controlled delivery to co-defendant Eduardo Guerrero-Inzunza who was arrested that same date.

## II. ANALYSIS

Andino makes three arguments in his Second Amended Motion to Suppress. First, the *Miranda* warnings were defective. Second, Andino's statements were involuntary due to false promises of leniency, and third, Andino's statements should be suppressed because of unnecessary delay in bringing Andino before a magistrate judge as required by Federal Rule of Criminal Procedure 5.

The first issue is with the *Miranda* warnings. There is no argument that the *Miranda* warnings were given, but rather the sufficiency of the warnings is in question. If a person in custody is to be interrogated, "he must first be informed in clear and unequivocal terms that he has the right to remain silent." *Miranda v. Arizona*, 384 U.S. 436, 467-468 (1966). The record reflects that the *Miranda* warnings were given and that Andino responded yes after he was asked if he understood each right that was read to him. Additionally, Andino signed the form acknowledging that he had been given and understood his rights. Andino argues that the warnings were given quickly and therefore lacked clarity, however it appears that there was no constitutional violation in the manner in which the warnings were read. Officer Guthrie paused long enough after each warning to allow Andino to respond that he understood each warning and he signed a form acknowledging that he had been given and understood his rights. Therefore, Andino's statements should not be suppressed due to a *Miranda* defect.

Defendant's second argument is his statements should be suppressed because they were elicited by false promises made by the officers. The issue is with statements made to Agent

4

Street on the drive from Las Vegas, NV to Salt Lake City, UT. Prior to being in the car with Agent Street who allegedly made these promises, Andino had given statements to officers at several different points leading to his Indictment. Immediately after his car was stopped and after he was arrested, Andino told officers about heroin in the PVC pipes in his Jeep and he gave a recorded interview wherein he discussed how he came to be in California picking up heroin and what he planned to do with it. Prior to his statements to Agent Street, Andino had already confessed to the heroin crime twice and had agreed to participate in a controlled delivery.

Additionally, Andino had signed a handwritten form which stated that law enforcement could not make promises regarding his prosecution and that his cooperation would be brought to the attention of the prosecutors subsequent to any actions he took to assist law enforcement. The government argues that while Agent Street's choice of words may not have been the best, his position was clarified prior to Andino completing the controlled delivery when he told Andino that he would not be let go if he completed the controlled delivery. Because Andino had already given statements and agreed to cooperate before being transferred into Agent Street's custody, his statements were not the result of false promises of leniency and should not be suppressed.

Andino's final argument is there was unnecessary delay in bringing him before a magistrate as required by Rule 5 of the Federal Rules of Criminal Procedure. 18 U.S.C. § 3501(c) provides that a confession given by a defendant within six hours immediately following his arrest or detention, if found to be given voluntarily, shall not be deemed inadmissible solely because of delay in bringing such person before a magistrate judge. Thus, since all of Andino's statements or confessions given to Officer Guthrie occurred within six hours of arrest, they are admissible. As to the statements made outside of the six-hour window, the exclusionary rule applies and courts must decide whether the delay was unnecessary or unreasonable. *Corley v.*

*United States*, 129 S.Ct. 1558, 1571 (2009). In this case, Andino was given the option to cooperate with a controlled delivery in order to receive a leniency recommendation. To complete the controlled delivery, there had to be a delay in presenting Andino before a magistrate because he had to be in Utah the next day to meet his contact. Because the delay in presenting Andino before a magistrate was to allow him the opportunity to benefit his ultimate sentence, the delay was not unnecessary or unreasonable. Additionally, Andino signed a waiver which waived his right to an appearance before a federal magistrate in California. The waiver was signed voluntarily and the delay in presenting him before a magistrate was neither unreasonable or unnecessary, therefore the Court will not suppress any statements or evidence of the controlled delivery based on a violation of Rule 5.

## III. CONCLUSION

Having reviewed the motion and the government's response, the Court denies the defendant's motion. Consequently, the defendant's Second Amended Motion to Suppress is DENIED.

DATED this 13th day of February, 2014.

BY THE COURT:

*[signature]*

DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT